**OPINION OF THE JUSTICES of the Supreme Court In Response to Question Propounded by the Governor of Delaware.**

Supreme Court of Delaware.

Sept. 12, 1967.

To His Excellency Charles L. Terry, Jr., Governor of Delaware.

Reference is made to your letter dated August 4, 1967, addressed to the Chief Justice, requesting the members of the Supreme Court for their opinions, under 29 Del.C. § 2102,* as to the constitutionality of a recent Amendment adding a new Chapter 26 to Title 14 of the Delaware Code. The Amendment, entitled "AN ACT TO AMEND TITLE 14 OF THE DELAWARE CODE BY PROVIDING FOR RAISING AND COLLECTION OF REV-

* 29 Del.C. § 2102 provides:

"§ 2102. Request for judicial opinions

"The Governor may, whenever he requires it for public information, or to enable him to discharge the duties of his office with fidelity, request the members of the Supreme Court to give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State."

ENUE FOR COUNTY VOCATIONAL-TECHNICAL HIGH SCHOOLS AND COUNTY VOCATIONAL-TECHNICAL CENTERS", was enacted by the General Assembly and was approved by the Governor on August 2, 1967. The Act is identified in your letter as Senate Bill No. 205 as amended by Senate Amendment No. 1.

The specific question presented is this:

"Does Senate Bill #205, as amended, having originated in the Senate, violate Article VIII, Section 2, of the Constitution of the State of Delaware?"

Art. 8, § 2 of the Delaware Constitution, Del.C.Ann., provides as follows:

"All bills for raising revenue shall originate in the House of Representatives; but the Senate may propose alterations as on other bills; and no bill from the operation of which, when passed into a law, revenue may incidentally arise shall be accounted a bill for raising revenue; nor shall any matter or cause whatever not immediately relating to and necessary for raising revenue be in any manner blended with or annexed to a bill for raising revenue."

 Before entering upon a discussion of the merits of the question, we note that disposition of the problem could be made under the Enrolled Bill Doctrine, reaffirmed recently in Opinion of the Justices, dated July 7, 1967. Del., 232 A.2d 103. Upon the Governor's request for an opinion, the members of this Court endeavor, insofar as possible, to look upon the question as though presented upon a regular appeal. In an ordinary case, the fact that the subject Act was a Senate Bill would not be before us because irrelevant under the Enrolled Bill Doctrine. Since the Act was enacted and authenticated by the General Assembly and having been signed into law by the Governor, the regularity of the legislative action leading to the enactment ordinarily would be conclusively presumed. It is generally held under the Enrolled Bill Doctrine th. evidence outside of a revenue act itself will

not be admitted to impeach the act on the theory that it did not originate in the lower house. E. g., Rainey v. United States, 232 U.S. 310, 34 S.Ct. 429, 58 L.Ed. 617 (1914); Mikell v. School Dist. of Philadelphia, 359 Pa. 113, 58 A.2d 339, 4 A.L.R.2d 962 (1948). However, in view of the importance you obviously place upon the substantive question involved, we have decided to proceed to a consideration thereof, noting nonetheless the continuing vitality of the Enrolled Bill Doctrine under ordinary circumstances.

The Act in question provides that any County Vocational Technical High School District or County Vocational Technical Center District may, in addition to the amounts appropriated to it by the General Assembly, levy and collect taxes for local school purposes upon the assessed value of real estate within the District. The board of trustees of each district is empowered to establish the tax rate within specified limitations. The Department of Finance of New Castle County and the Receivers of Taxes and the County Treasurers of Kent and Sussex Counties are directed to collect taxes thus levied. The Act provides:

"All money so collected shall be paid to the State Treasurer and shall be deposited by him in a separate account in the depository for other school moneys to the credit of the District."

The Act also provides:

"Warrants or drafts on the said fund shall be drawn by the School Board of the District and shall be applied only for the purpose for which the levy is made."

 This Act is not, in our opinions, a revenue-raising bill within the meaning of Art. 8, § 2 of the Delaware Constitution.

The requirement of Art. 8, § 2, that "[a]ll bills for raising revenue shall originate in the House of Representatives", was taken ⸱ ⸱⸱⸱ ⸱⸱ from Art. 1, § 7 of the Constitution of the United States. It appeared in the Delaware Constitutions of 1792 and 1831 (Art. 2, § 14) and was carried there-

from into our present Constitution. See 2 Delaware Constitutional Debates, 1897, pp. 1412–1415. The provision was also taken from the Federal Constitution by many other states and included in their constitutions.

■ It is generally agreed by both federal and state courts that to qualify as a revenue-raising bill, within the purview of this constitutional provision, the money derived from the tax imposed must be available for the general governmental uses and purposes of the taxing sovereignty, i. e., for defraying its general governmental expenses and obligations. This principle was recognized by our Superior Court in Yourison v. State, 3 W.W.Harr. 577, 140 A. 691 (1928), involving a statute which authorized a tax on boats. The concept is more fully enunciated in United States v. Norton, 91 U.S. 566, 23 L.Ed. 454 (1876); Twin City Nat. Bank of New Brighton v. Nebecker, 167 U.S. 196, 17 S.Ct. 766, 42 L.Ed. 134 (1897); Evers v. Hudson, 36 Mont. 135, 92 P. 462 (1907); Chicago B. & Q. R. Co. v. School Dist. No. 1, 63 Colo. 159, 165 P. 260 (1917); Mikell v. School Dist. of Philadelphia, supra. Widely quoted in this connection is the language of Mr. Justice Story in United States v. Mayo (C.C.1813), Fed.Cas.No.15,755, 1 Gall. 396, that "revenue laws" mean such laws "as are made for the direct and avowed purpose of creating and securing revenue or public funds for the service of the government." Also much quoted is the statement in 1 Story on the Constitution (5th Ed.) Sec. 880, that the constitutional limitation here under consideration "has been confined to bills to levy taxes in the strict sense of the words." See Annotation, 4 A.L.R.2d 973–990.

■ The corollary of the above rule is that laws delegating authority to local governmental units to levy and collect taxes for local purposes are not bills for "raising revenue" within the meaning of that term as used in the constitutional requirement. Compare Morgan v. Murray, 134 Mont. 92,

328 P.2d 644 (1958). Specifically, statutes authorizing local governmental bodies to levy taxes for school purposes, the proceeds of which are to be used for the benefit of local schools only, are regarded as being outside the scope of the constitutional requirement here under consideration. Cassady v. Oldham County, 246 Ky. 772, 56 S.W.2d 368 (1933); Evers v. Hudson, supra; Mikell v. School Dist. of Philadelphia, supra; Chicago B. & Q. R. Co. v. School Dist. No. 1, supra.

■ We are of the opinion that Art. 8, § 2 is confined to bills raising revenues for defraying the expenses and obligations of the general government of the State. This strict construction is impelled not only by the authorities but also by the historical background and purpose of the constitutional provision. The requirement that all revenue-raising measures must originate in the lower house evolved from the exclusive right to originate such bills which was vested in the popularly elected English House of Commons as protection against the hereditary House of Lords. Justification for conferring this exclusive right upon the Federal House of Representatives is often found in the fact that until 1913, with the adoption of the Seventeenth Amendment, United States Senators were selected by the legislatures of the states, the United States House of Representatives thereby being the only House of Congress elected directly by the people. But, in Delaware, where the Senate, as well as the House of the General Assembly, has always been elected by direct vote of the people, the traditional reason for the constitutional requirement does not exist. A strict interpretation of Art. 8, § 2 is, in our view, further warranted ·by these historical considerations.

Returning to the Act before us: The Act provides that, if levied within the discretion of each board of trustees, all proceeds of the tax must be devoted to local school purposes within the county where raised. Thus, the tax may not be used for the

State's general governmental purposes. Applying the rule of law we deem applicable, we are unanimously of the opinion that the subject Act is not a bill for raising revenue within the meaning of Art. 8, § 2 of the Delaware Constitution.

Accordingly, we answer the question presented in the negative.

Respectfully,

DANIEL F. WOLCOTT
Chief Justice

JAMES B. CAREY

D. L. HERRMANN
Justices