**David A. SPIELBERG, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Jan. 18, 1989.
Decided: March 16, 1989.

On Certification from the Superior Court. Questions Answered.

Kenneth E. Fink, Ferry & Fink, Wilmington, for appellant.

Gary A. Myers, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

WALSH, Justice.

In the exercise of its constitutional authority,[1] this Court has accepted for determination three questions of law, certified by the Superior Court, involving the construction of recently-enacted criminal statutes dealing with sexual offenses. The certification followed the conviction, after a jury trial, of David A. Spielberg for attempted unlawful sexual intercourse in the first degree, unlawful sexual penetration in the second degree, burglary in the first degree, and assault in the third degree. The certified questions relate only to the sexual offense convictions.

The three questions of law certified by the Superior Court are:

(a) Are the statutes governing sexual offenses, 11 *Del.C.* Sections 761–775, particularly 11 *Del.C.* Sections 771 and 775, void because the General Assembly has neither classified those offenses in the bodies of the statutes as a misdemeanor or felony, nor specified in the bodies thereof the penalty or penalties for committing the acts which constitute the offenses?

(b) Notwithstanding 1 *Del.C.* Section 306, did the General Assembly in fact classify the aforesaid sexual offenses, particularly 11 *Del.C.* Sections 771 and 775, and specify the penalty or penalties therefor, by including as a part of the enrolled bill enacted into law the headings or catchlines which purport to classify said offenses and prescribe the penalty or penalties therefor? *See* 65 *Del. Laws* c. 494 and House Substitute No. 1 for House Bill No. 326, 133rd General Assembly. *See also* Del. Const. art. II, § 10; *Opinion of the Justices*, Del.Supr., 232 A.2d 103, 104 (1967); *Opinion of the Justices*, Del.Supr., 233 A.2d 59, 61 (1967); *Wilmington Savings Fund Society v. Green*, Del.Supr., 288 A.2d 273, 274–76 (1972).

(c) If the Court concludes that the General Assembly failed to classify the aforesaid sexual offenses, particularly 11 *Del.C.* Sections 771 and 775, are said offenses nonetheless misdemeanors under 11 *Del.C.* Section 233(c)?

In certifying the questions the Superior Court noted that "... the validity of this and numerous other prosecutions for sexual offenses under 11 *Del.C.* Sections 761–775 may be in doubt...." Indeed, a companion case, decided this date, *Morgan v.*

---

1. Article IV, section 11(9) of the Delaware Constitution empowers this Court:

(9) To hear and determine questions of law certified to it by other Delaware courts and the United States District Court for the District of Delaware where it appears to the Su-

preme Court that there are important and urgent reasons for an immediate determination of such questions by it....

Del. Const. art. IV, § 11(9) (1897, amended 1983).

*Young,* Del.Supr., 558 A.2d 296 (1988), poses the same issues of interpretation. We find that the amended statutes, under which Spielberg was convicted, are valid and we answer the certified questions accordingly.

## I

The issue presented by the certified questions results from the passage, by the General Assembly, of legislation amending certain criminal code provisions entitled "AN ACT TO AMEND TITLE 11 OF THE DELAWARE CODE RELATING TO CERTAIN SEXUAL OFFENSES." *See* 65 *Del. Laws* c. 494. This statute, which became effective July 9, 1986, sought to create thirteen crimes which had not heretofore existed in the language there expressed. In only two of the thirteen component offenses does the penalty to be imposed appear in both the heading as well as the body of the enrolled bill.[2] In all other instances the penalty designation appears only in the section heading of the enrolled bill. Thus, with respect to the two offenses of which Spielberg was convicted, the penalty was designated only in the section heading of the enrolled bill. A violation of section 775 is classified as a Class A Felony in that section's heading: *Unlawful Sexual Intercourse in the First Degree: Class A Felony,* and a violation of section 771, is classified as a Class C felony and the penalty is provided in the enrolled bill in its heading: *Unlawful Penetration in the Second Degree: Class C Felony.*

In essence, Spielberg argues that the failure of the General Assembly to include a penalty provision in the body of sections 771 and 775, and other offenses similarly cast, renders them fatally defective since under Delaware law all crimes must be created by statute and are required to be classified as felonies, misdemeanors or violations. *See* 11 *Del.C.* §§ 202, 4201–03. This argument proceeds on the premise that the headings or catchlines of an en-

rolled bill are not part of the law. The State, while conceding that the statutes under review were inartfully drafted, counters that the statutory headings may be considered in an effort to discover the legislative intent. We find that Spielberg's premise is faulty and therefore disagree with his conclusion that the statutes under which he was convicted are fatally defective.

## II

In the construction of a statute, this Court has established as its standard the search for legislative intent. *Richardson v. Wile,* Del.Supr., 535 A.2d 1346, 1348 (1988). Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls. *See Evans v. State,* Del.Supr., 516 A.2d 477, 478 (1986). If uncertainty exists, however, rules of statutory construction are applied. To that end, the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided. *Daniels v. State,* Del.Supr., 538 A.2d 1104, 1110 (1988); *Burpulis v. Director of Revenue,* Del.Supr., 498 A.2d 1082, 1087 (1985).

Where the interpretative task involves a criminal statute, which is a part of the Delaware Criminal Code, this Court is enjoined by section 203 of the Code from adopting a strict construction to the detriment of the fair import of the statute. 11 *Del.C.* § 203. Section 203 provides:

**§ 203. Principles of construction.**

The general rule that a penal statute is to be strictly construed does not apply to this Criminal Code, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this title.

*Id.*

One of the general purposes which must be considered in construing a criminal statute

---

**2.** Section 763 bears the heading "*Sexual Harassment: Class B Misdemeanor*" but also includes within the body of the section the language: "Sexual harassment is a Class B Misdemeanor." Section 766 bears the heading "*Incest: Class A*

*Misdemeanor*" but includes in its text the language: "Incest is a Class A Misdemeanor and is an offense within the original jurisdiction of the Family Court." 65 Del.Laws c. 494.

is "[t]o give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction...." 11 *Del.C.* § 201(2). Spielberg's construction of sections 771 and 775, if correct, requires this Court to find that the sections fail this basic purpose.

Spielberg's argument, that the subject crimes lack penalties, is constructed on a literal application of the general statutory construction guidelines set forth in Title 1, Chapter 3, of the Code which broadly govern interpretations of component statutes of the Delaware Code. *See* 1 *Del. C.* §§ 301–08. The rules of construction and definitions imparted by Chapter 3, on which Spielberg relies, control "... unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the Code or the context of the same statute." 1 *Del.C.* § 301.

The rule of construction which Spielberg contends is controlling on the issue of the permissibility of recourse to catchlines, to determine legislative intent, is section 306. 1 *Del.C.* § 306. Section 306 provides:

> § 306. **Analyses of titles, parts, chapters, subchapters and sections; section headings; notes.**
>
> The various analyses set out in this Code, constituting enumerations or lists of the titles, parts, chapters, subchapters and sections of this Code, and the descriptive headings or catchlines immediately preceding or within the texts of the individual sections of this Code, except the section numbers included in the headings or catchlines immediately preceding the texts of such sections, do not constitute part of the law. All derivation and other notes set out in this Code are given for the purpose of convenient reference, and do not constitute part of the law.

*Id.*

Spielberg views section 306 as more than an aid in the construction of the substantive portions of the Delaware Code. He claims that its language prohibits subsequent General Assemblies from enacting statutes in a manner inconsistent with the rule set forth in section 306. While we question the constitutional assumption upon which this argument is allegedly based, it is unnecessary to address it. We view section 306 as having only historical significance. In our view, section 306 merely provides an indication of the methodology used by the 1953 Code revisors in the compilation of the revised Code. *Cf. Monacelli v. Grimes,* Del.Supr., 99 A.2d 255, 260 (1953). (discussing preparation and adoption of the 1953 revised Code). The interpretive standards set forth in Chapter 3, Title 1 of the 1953 Code were carried forward, without change, into the 1974 revision of the Delaware Code.

We also recognize that 1 *Del.C.* § 109(e) suggests that future General Assemblies may enact substantive legislative amendments without heading or catchline amendments.[3] In our view these guidelines, to the extent they have a prospective reach, are directory only and, as section 301 makes clear, not intended to foreclose questions of "... manifest intent of the General Assembly...." 1 *Del.C.* § 301.

In support of his argument that section 306 precludes consideration of the catchline of an enrolled bill, Spielberg relies upon *Matthews v. Bryerton,* Del.Supr., 193 A.2d 83, 87 (1963). In *Matthews,* this Court held that a headnote or catchline which is inconsistent with the body of the statute "... is not part of the law ..." and cited section 306 as authority. *Id.* In this case, the catchline of the enrolled bill is consistent with the text of the statute because it contains the only manifestation of legislative intent to attach a penalty for engaging in the proscribed conduct. In *Matthews,* it

---

**3.** Section 109(e) provides:

(e) When sections of this Code are amended, the descriptive headings or catchlines immediately preceding, or within them, need not be amended, and when new sections are enacted, descriptive headings or catchlines need not be enacted to accompany them, in view of § 306 of this title, except that any desired changes in the section numbers contained in any such headings or catchlines shall be made by specific statutory amendments of such numbers, and new sections shall be assigned proper title section numbers by the law or laws that enact them.

was determined that if recourse to the catchline were permitted, conflicting manifestations of legislative intent emerged. *Id.* Here, such recourse illuminates a single legislative intent.

Even if the presence of a penalty in the catchline coupled with the absence of a penalty in the body of the statute, may be viewed as an inconsistent indication of legislative intent, our quest yields the same result. To accord section 306 the preclusive application sought by Spielberg would be to ignore the title of the session law: "AN ACT TO AMEND TITLE 11 OF THE DELAWARE CODE RELATING TO CERTAIN SEXUAL OFFENSES." 65 Del. Laws c. 494. Recourse to the title of the act or enrolled bill is not only relevant to an inquiry into the meaning of the act, but is required in following the constitutional mandate that only a single subject shall be addressed in a bill.[4] Moreover, to conclude that the General Assembly intended to redefine and restate certain sexual offenses by decriminalizing them leads to an absurd result. Where a literal application of a statute yields an unreasonable or absurd result, such application must be avoided. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985). A literal application of section 306, which denies recourse to the catchlines of 65 *Del. Laws* c. 494 as enrolled, requires that this Court conclude that the legislature sought to establish sexual offenses, while certain, but not all, of the component crimes contain no penalties. The result would be that the General Assembly sought to redefine crimes such as rape and incest by abolishing them. Only through recourse to the catchlines is that result avoided.

Not only is recourse to the catchlines justified to gain the "... fair import of [the statute's] terms ...", but because the penalties designated in the catchlines specifically refer to the penal classifications of the Delaware Criminal Code they have independent significance. 11 *Del.C.* § 203. All crimes under Delaware law are created by statute and are required to be classified as felonies, misdemeanors or violations. *See* 11 *Del.C.* §§ 202, 4201–03. Each of the five classifications of felonies and four classifications of misdemeanors carries a specific range of authorized penalties. 11 *Del.C.* §§ 4205–09(A). The designation by statute of a particular penalty, *e.g.*, Class C Felony under section 771, incorporates, by reference, a separate and essential element for the fixing of criminal liability. Thus, the catchline designation may not be deemed as mere surplusage or inconsistent with the statute, but must be considered a necessary element to complete the definitional requirement that all crimes in Delaware must be classified. This design, whether reflected in the text of the statute or the catchline, implements the intent expressed in the COMMENTARY on section 4201 "... that as new offenses are added to this Code, their punishment will be prescribed in terms and the classes of offenses here set forth." *Delaware Criminal Code with Commentary* 474 (1973). Thus, we hold that the catchlines of the enrolled bill, in the absence of a contradictory statement in the body of the statute, are properly considered part of the law when determining the legislatively intended penalty classification.

Consideration of headnotes to determine legislative intent is not unprecedented even in the face of interpretive statutory guidelines to the contrary. The New Jersey Revised Statutes contain a provision almost identical to section 306 which recognizes the limited effect to be given its section headings or catchlines. N.J.Stat.Ann. § 1:1–6 (West Supp.1988).[5] Despite the

---

4. Article II, Section 16 of the Delaware Constitution provides:

   **§ 16. Restriction of bills and resolutions to one subject; expression in title; exception.** Section 16. No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title.

Del. Const. Art. II § 16.

5. Section 1:1–6 of the New Jersey Revised Statutes provides in pertinent part:

   In the construction of the Revised Statutes, or any part thereof, no outline or analysis of the contents of any title, subtitle, chapter, article or other part thereof ... and no headnote or source note to any section thereof

language of this section, the New Jersey Superior Court found that "[i]t is appropriate to consider a headnote which was before the members of the Legislature during their debate and vote." *State v. Brown*, 188 N.J.Super. 656, 458 A.2d 165, 168 (L.Div.1983). The court further concluded that "... the headnote is part of the statute and a proper matter for consideration in ascertaining the intent of the Legislature." *Id.* Significantly, the Supreme Court of New Jersey cited *State v. Brown*, with approval, for this proposition. *See Phillips v. State*, N.J.Supr., 486 A.2d 318, 322 n. 3 (1985).

In sum, we reject Spielberg's hypertechnical attempt at strict construction as contrary to the Criminal Code's enjoinder to effect the purpose of the law by giving "... fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction." 11 *Del.C.* § 201. *Accord* 11 *Del.C.* § 203. Thus we answer Question (a) in the negative and Question (b) in the affirmative. In light of those answers, it is unnecessary to answer Question (c).

---

shall be deemed to be a part of the Revised Statutes....

N.J.Stat.Ann. § 1:1–6 (West Supp.1988).